# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

Bertena L.,[1]

           Plaintiff,

 v.            3:25-CV-65
              (MJK)

Commissioner of Social Security,

           Defendant.

---

Peter A. Gorton, Esq., for Bertena L.
Vernon Norwood, Special Asst. U.S. Attorney, for Defendant

Mitchell J. Katz, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

Bertena L. brought this action under the Social Security Act (42

U.S.C. § 405(g)) seeking judicial review of the Social Security

Commissioner's final decision denying her application for benefits. (Dkt.

1). Bertena L. consented to the jurisdiction of a Magistrate Judge. (Dkt.

5). Both parties filed briefs (Dkts. 7, 8, 9), which the Court treats as

---

[1] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only his first name and last initial.

motions under Fed. R. Civ. P. 12(c), in accordance with General Order 18.

## I.   PROCEDURAL HISTORY

On June 10, 2022, Bertena L. filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning on January 10, 2019 (T. 18).[2] Her application was initially denied on September 23, 2022, and upon reconsideration on April 25, 2023. (*Id.*). On December 14, 2023, Administrative Law Judge ("ALJ") Paul Goodale held a virtual hearing during which Bertena L. and Vocational Expert ("VE") Francesco Fazzolari testified. (T. 37-95). On April 3, 2024, ALJ Goodale issued a decision denying Bertena L. benefits. (T. 29). This became the agency's final decision after the Appeals Council denied Bertena L.'s request for review. (T. 1-3).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standards

To be considered disabled, a claimant seeking Title II benefits must establish that they are "unable to engage in any substantial

---

[2] All page references are to the Administrative Transcript ("T."), and not the page numbers assigned by the CM/ECF pagination system. All other page references are to the numbers assigned by the CM/ECF pagination system.

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A). Additionally, the claimant must show:

> physical or mental impairment or impairments [must be] of such severity that they are not only unable to do their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which they live, or whether a specific job vacancy exists for them, or whether they would be hired if they applied for work.

42 U.S.C. § 1382c(a)(3)(B) (cleaned up).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 404.1520 (for DIB) to evaluate disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [they are] not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [their] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [them] disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe

3

> impairment, [they have] the residual functional capacity to perform [their] past work. Finally, if the claimant is unable to perform [their] past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); *see also Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Berry*, 675 F.2d at 467). The claimant has the burden of establishing disability at the first four steps. *Berry*, 675 F.2d at 467. If the claimant establishes that their impairments prevent them from performing their past work, then the burden shifts to the Commissioner to prove the fifth and final step. *Id.*

### B.   Scope of Review

When reviewing a final decision of the Commissioner, courts must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Id.* at 417; *see also Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It is "more than a scintilla" of evidence scattered throughout the administrative record.

*Id.* But this standard is a very deferential standard of review "—even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, reviewing courts consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). Even so, reviewing courts may not substitute their interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Id.*; *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

ALJs need not explicitly analyze every piece of conflicting evidence in the record. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *see also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]"). But they cannot "'pick and choose' evidence in the record that supports [their] conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *see also Fuller v.*

*Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   FACTS

The record includes Bertena L.'s medical treatment records which the parties are familiar with. The Court will refer to the pertinent records and Bertena L.'s hearing testimony in its analysis as appropriate.

## IV.   THE ALJ'S DECISION

At step one of the five-step sequential evaluation, ALJ Goodale determined that Bertena L. had not engaged in substantial gainful activity since January 10, 2019, the alleged onset date. (T. 21).

At step two, ALJ Goodale found that Bertena L. had the following severe impairments: right hip disorder, disorder of the lumbar spine, and obesity. (*Id.*). ALJ Goodale also found that Bertena L. had the following non-severe physical impairments: left hip disorder, cervical spine disorder, TBI, headache disorder, and neuropathy. (*Id.*).

At step three, ALJ Goodale determined that Bertena L.'s impairments or combination of impairments did not meet or medically

6

equal the severity of one of the listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (*Id.*).

Next, ALJ Goodale addressed the "paragraph B" criteria. (T. 21-22). "To satisfy the paragraph B criteria," mental impairments "must result in one extreme limitation or two marked limitations in a broad area of functioning." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b) (cleaned up). The four broad areas of mental functioning are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting and managing oneself. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C). Here, ALJ Goodale found that Bertena L. did not meet the "paragraph B" criteria because it was determined that Bertena L. had no limitations in understanding, remembering, or applying information; no limitations in interacting with others; and only mild limitations in concentrating, persisting, maintaining pace, and adapting or managing herself. (T. 21-22).

Next, ALJ Goodale determined that Bertena L. had the residual functional capacity ("RFC") to perform:

> light work, but with the following limitations: she could occasionally stoop, crouch, crawl and kneel, occasionally

7

balance per the *Selected Characteristics of Occupations;* she could occasionally climb ramps and stairs, but could not climb ladders, ropes or scaffolds. Bertena L. needed to avoid concentrated exposure to workplace hazards such as dangerous machinery (excluding passenger motor vehicles), and unprotected heights. Bertena L. could not do production rate work such as assembly line type work . . . but could do individual table/bench work.

(T. 23) (cleaned up).

When crafting the RFC, ALJ Goodale stated that he considered all Bertena L.'s symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (*Id.*). ALJ Goodale added that he fully considered "the medical opinion(s) and prior administrative medical finding(s)" as required by 20 C.F.R. §§ 404.1520c. (*Id.*).

At step four, ALJ Goodale found that Bertena L. could perform past relevant work as an inventory clerk. (T. 28).

Accordingly, at step five, ALJ Goodale determined that Bertena L. was not disabled, as defined in the Social Security Act, from the onset date to the date last insured. (T. 29).

## V.    ISSUES IN CONTENTION

At base, Bertena L. appears to argue that ALJ Goodale did not support his RFC determination with substantial evidence. To support

her argument, Bertena L. alleges that ALJ Goodale failed to consider medical evidence produced after her date last insured ("DLI")—evidence that allegedly would have required further limitations due to her right hip impairments. (Bertena L.'s Brief (Pl. Br.), pg. 7 (Dkt. 7)). (Bertena L.'s Reply Brief ("Rep. Br."), pgs. 1-2 (Dkt. 9)). Bertena L. also alleges that ALJ Goodale improperly evaluated medical opinions from state agency examiner Dr. Vazquez-Gonzalez and treating provider PA Webb. *Id.*

The Commissioner responds that ALJ Goodale's opinion was supported by substantial evidence. (Defendant's Brief ("Def. Br.), pgs. 5–15 (Dkt. 8). The Court agrees with the Commissioner and declines to disturb ALJ Goodale's decision.

## VI.    DISCUSSION

The Court affirms ALJ Goodale for two reasons. First, ALJ Goodale properly considered post-DLI evidence to support his opinion. And second, ALJ Goodale properly analyzed the medical opinions from Dr. Vazquez-Gonzalez and PA Webb. In consequence, the Court affirms ALJ Goodale's decision.

9

### A.    ALJ Goodale properly evaluated post-DLI evidence.

ALJ Goodale properly evaluated the post-DLI evidence. To start, a Title II period of disability does not begin after a claimant's DLI status has expired. *See Woods v. Colvin*, 218 F. Supp. 3d 204, 207 (W.D.N.Y. Nov. 3, 2016)). The claimant is required to establish a disability *prior* to their DLI. 42 U.S.C. § 423(d)(5)(A) (incorporated by 42 U.S.C. § 1382c(a)(3)(H)(i)). And the disability must result from a medically determinable impairment that has lasted, or is expected to last, for a continuous period of not less than twelve months. *Id.* § 423(d)(1)(A).

Bertena L.'s alleged onset date was January 10, 2019, and her DLI was March 19, 2019. (T. 18-19). Thus, the time at issue in this case is a very narrow period between the alleged onset date and the DLI. Even so, ALJ Goodale cannot automatically discount evidence created outside of the three-month timeframe. *See Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989). Said differently, "Medical opinions given after the date that [plaintiff's] insured status expired are taken into consideration if such opinions are relevant to [plaintiff's] condition prior to that date. The expiration date should not act as a cutoff with regard to the reports considered on this specific issue." *Dailey v. Barnhart*, 277

F. Supp. 2d 226, 233 n.14 (W.D.N.Y. 2003) (citation omitted). This is so because "evidence bearing upon [a plaintiff's] condition subsequent to the date upon which the earning requirement [i.e., insured status] was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present . . . ." *Pollard v. Halter*, 377 F.3d 183, 193-94 (2d Cir. 2004) (quotations omitted and alterations in the original). When an ALJ fails to consider post-DLI evidence that could reflect the severity and continuity of impairments that existed before the DLI, remand is warranted. *See id.* at 194-95 (reversing and remanding because neither the ALJ nor the district court considered post-DLI evidence).

In DIB cases, "evidence that an impairment reached disabling severity only after a claimant's DLI cannot be the basis for a determination of entitlement to disability insurance benefits, even if the impairment may have existed before the claimant's DLI and subsequently worsened." *Burch v. Comm'r of Soc. Sec.*, No. 15-CV-9350, 2017 WL 1184294, at *2 (S.D.N.Y. Mar. 29, 2017). Instead, a claimant is

11

only entitled to benefits if they establish that their conditions reached disabling severity on or before the DLI. *See Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989).

Bertena L. argues that post-DLI evidence shows that her hip condition was "a severe impairment that existed before the DLI," and "that the severe impairment lasted 12 months." (Pl.'s Br. At 9). And thus, she argues, it was error for ALJ Goodale not to consider post-DLI evidence. First, ALJ Goodale did consider post-DLI evidence. She argues that ALJ Goodale only analyzed a single piece of imaging from post-DLI evidence of record—but this is not so. *See* (Pl. Br., pgs. 10, 12). ALJ Goodale analyzed an MRI taken two months post-DLI which showed "status post total right hip arthoplasty with no right thing hematoma." (T. 25). ALJ Goodale also rejected (and therefore must have considered) a medical opinion from Bertena L.'s treating provider Dr. Renzi, which was given one year after the DLI. (T. 27). In fact, ALJ Goodale rejected Dr. Renzi's opinion partly because he opined that Bertena L. had *no limitations*. (T. 10). ALJ Goodale reasoned that Dr. Renzi's opining no work-related limitations did not square with Bertena

12

L.'s right hip disorder "as documented by imaging studies and physical examinations." (*Id.*).

Second, the post-DLI evidence confirmed ALJ Goodale's findings of a severe medical impairment that was not disabling during the relevant period. ALJ Goodale *found* Bertena L.'s right hip condition severe, but he did not find it disabling. (T. 21). And in this case, it was not enough for Bertena L. to show that she had a severe impairment, that had lasted or could be expected to last over twelve months; she needed to show that her severe impairment rendered her disabled on or before the DLI. *See McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (explaining that finding an impairment "severe," but not disabling, is permissible because "the standard for a finding of severity under [s]tep [t]wo of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases."). Bertena L. has not done so.

In any event, ALJ Goodale considered sufficient evidence from the medical records pre and post-DLI to craft an RFC determination that fits within the narrow window applicable to Bertena L.'s application. *See e.g.* (T. 25-27). Bertena L. claims that ALJ Goodale should have provided restrictions that would have precluded her from light work due

to her right hip condition. *See* (Pl. Br., pgs. 12-15). Yet ALJ Goodale specifically accounted for Bertena L.'s continued right hip pain by restricting her to no assembly line type work—and by rejecting Dr. Renzi's opinion. (T. 23, 26-27). Altogether, Bertena L.'s arguments about post-DLI evidence do not help her because she has not shown that her right hip disorder rendered her disabled before or on the DLI. Again, "[i]t is the disability, and not just the impairment, that must have existed before the person's insured status expired." *Arnone*, 882 F.2d at 38. And although "medical evidence generated after an ALJ's decision cannot be deemed irrelevant solely because of timing," *Williams*, 236 F. App'x at 644 (cleaned up), ALJ Goodale did not reject post-DLI evidence solely on timing in this case. In the end, the Court finds ALJ Goodale's decision supported by substantial evidence.

**B. ALJ Goodale properly evaluated the medical opinions of Dr. Vazquez-Gonzalez and PA Webb.**

ALJ Goodale properly evaluated the medical opinions of Dr. Vazquez-Gonzalez and PA Webb. When evaluating medical opinion evidence, ALJs' must consider all medical opinions and "evaluate their persuasiveness" under a five-factor framework. The five factors are:

14

(1) supportability, (2) consistency, (3) relationship with the claimant (which has five sub-factors to consider), (4) specialization, and (5) other factors. 20 C.F.R. § 404.1520c(a)-(c). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability." *Lisa J.H. v. Comm'r of Soc. Sec.*, 5:24-CV-01247, 2025 WL 3669633, at *5 (N.D.N.Y. Nov. 18, 2025).

"Supportability" is an internal check: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1),  416.920c(c)(1). "Consistency" is an external check: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2), § 416.920c(c)(2). ALJs' must explicitly state how they considered both factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

ALJ Goodale properly analyzed the supportability and consistency of Dr. Vazquez-Gonzalez's opinion. To begin, Dr. Vazquez-Gonzalez based his opinion on evidence from the adjudicative time period—January 10, 2019 to March 31, 2019. (T. 112). He specifically focused on a treating session that Bertena L. had on March 28, 2019. (*Id.*). Dr. Vazquez-Gonzalez opined that Bertena L. could occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds. (T. 111). Dr. Vazquez-Gonzalez also opined that Bertena L. could stand, walk, or sit (with normal breaks) for "about 6 hours in an 8-hour workday." (*Id.*) (cleaned up). He based his opinions on treatment records from March 25, 2019, and March 28, 2019. (*Id.*). Dr. Vazquez-Gonzalez ultimately determined that Bertena L. could perform her past relevant work. (T. 113).

ALJ Goodale properly found that Dr. Vazquez-Gonzalez's opinion was supported by substantial evidence. When analyzing the supportability of Dr. Vazquez-Gonzalez's opinion, ALJ Goodale reasoned that Dr. Vazquez-Gonazlez supported his review by the medical evidence from  the period under adjudication, and that the medical evidence offered  post-DLI did not show a significant worsening

16

during the period at issue. (T. 26). ALJ Goodale also noted that Dr. Vazquez-Gonazlez "provided extensive rational in support of his opinion, citing to specific evidence of record, and resolving inconsistencies in the record." (T. 26-27). Although ALJ Goodale's supportability analysis could have been clearer, he referred to his previous analysis of the medical evidence, and "courts have regularly held that an ALJ has sufficiently articulated his reasoning regarding supportability and consistency where they directly refer back to a thorough discussion of the record evidence that immediately precedes his analysis of the medical opinion evidence." *Adam R. T. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1170 (FJS/ATB), 2023 WL 1775689, at *4 (N.D.N.Y. Feb. 6, 2023) (cleaned up). And so, ALJ Goodale properly analyzed and found Dr. Vazquez-Gonzalez's opinion supported.

ALJ Goodale properly found Dr. Vazquez-Gonzalez's opinion consistent with other medical evidence of record. When analyzing the consistency of Dr. Vazquez-Gonzalez's opinion, ALJ Goodale reasoned that it was "consistent with the relatively minimal abnormalities note[d] on physical examinations and imaging studies . . . [and] the noted improvement with treatment during the period at issue." (T. 27).

17

To the extent that Bertena L. suggests that Dr. Vazquez-Gonzalez's opinion is "grossly inconsistent" with the remainder of the record, she is mistaken. (Pl. Br., pg. 17). Dr. Vazquez-Gonzalez found that Bertena L. retains full muscle strength and presents with a normal gait. (T. 112). Likewise, Dr. McConn found that Bertena L. possessed full muscle strength, sensation, and range of motion in her arms and legs. *See* (T. 798-99). Dr. Stuelke observed that Bertena L. had no abnormalities and that she presented with a normal gait. (T. 1407). And Michael Fritzen, PT, noted that Bertena L. gait is "much better" when she is not under observation. (T. 1410). Moreover, Dr. Vazquez-Gonzalez's opined limitations are consistent, and in some cases more generous, than other medical professionals in the record. For example, Dr. Vazquez-Gonzalez found that Bertena L. could not sit, stand, or walk for more than 6 hours per 8-hour workday. (T. 111). Dr. Wulff, by contrast, did not limit Bertena L.'s ability to ambulate. *See e.g.*, (T. 825-26, 828).

In addition, ALJ Goodale found that Dr. Vazquez-Gonzalez is an expert in social security claims, that he provided "extensive rationale" to support his opinion, that his opined limitation were consistent with the record, and that his opinion was consistent with the relatively

18

minimal abnormalities noted on Bertena L.'s physical examinations and imaging. (T. 26-27). This language is sufficient to support ALJ Goodale's consistency analysis of Dr. Vazquez-Gonzalez's opinion. *See Justin S. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1575 (ATB), 2022 WL 306445, at *10 (N.D.N.Y. Feb. 2, 2022) (holding that the ALJ properly gave persuasive value to a mental health medical opinion by noting it was supported with detailed explanation, was consistent with the record as a whole, and by noting the doctor was a mental health expert well versed in agency standards and evidentiary requirements). Further, Bertena L. argues that ALJ Goodale improperly referred to Dr. Vazquez-Gonzalez as "expert," but that is simply not so. (Pl. Br., pg. 16).  ALJs' are entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of Social Security disability. *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) (explaining that "[t]he report of a [s]tate agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."). And ALJ Goodale was entitled to rely on Dr. Vazquez-Gonzalez's opinion in this case. At

bottom, ALJ Goodale properly analyzed the supportability and consistency of Dr. Vazquez-Gonzalez's opinion.

ALJ Goodale also properly analyzed the supportability and consistency of PA Webb's medical opinion. Bertena L. argues that ALJ Goodale impermissibly rejected PA Webb's opinion because it was provided in check-box form. (Pl. Br. at 18). While true that a medical opinion cannot "be discounted . . . based on the naked fact that it was provided in a check-box form," *Colgan v. Kijakazi*, 22 F.4th 353, 361 (2d Cir. 2021), it may be discounted if it is not "supported by substantial evidence." *Schillo v. Saul*, 31 F.4th 64, 77 (2d Cir. 2022); *see also Halloran v. Barnhart*, 362 F.3d 28, 31 n.2 (2d Cir. 2004) (stating that a standardized form without accompanying explanation is "only marginally useful for purposes of creating a meaningful and reviewable factual record").

Here, ALJ Goodale rejected PA Webb's opinion not because it was provided on a checkbox form, but because it was unsupported by "any significant narrative explanation, rational, or description of clinical or diagnostic findings in support of the extreme limitations she assessed." (T. 27); *see also Robert O. v. Comm'r of Soc. Sec.*, No. 3:20-CV-1612

20

(TWD), 2022 WL 593554, at *13 (N.D.N.Y. Feb. 28, 2022) (holding that the ALJ did not err in concluding medical opinions on check-box forms lacked supporting explanations "or references to specific clinical or diagnostic findings to support the proposed limitations.") (cleaned up). ALJ Goodale further clarified that PA Webb's opinion was unsupported by physical and mental status examinations that she herself conducted during the time under adjudication. (T. 27) (citing (T. 1732, 1735)).

ALJ Goodale properly assessed the consistency of PA Webb's opinion. For consistency, ALJs' "must look outside the medical opinion itself to evidence from other medical sources and nonmedical sources in the claim and will find the medical opinion more persuasive the more consistent it is with these external sources." *Kathleen A. v. Comm'r of the SSA*, No. 3:20-CV-1034, 2022 WL 673824, at *5 (N.D.N.Y. Mar. 7, 2022) (cleaned up). That is precisely what ALJ Goodale did. ALJ Goodale noted that PA Webb's opined limitations were inconsistent with imaging studies that showed minimal abnormalities. (T. 27); *see e.g.*, (T. 1531-33, 1538, 1546-48). ALJ Goodale also noted that PA Webb's assessed limitations were inconsistent with relatively minimal physical abnormalities assessed. (*Id.*); *see e.g.*, (T. 111-12, 798-99, 1407,

1732, 1735). ALJ Goodale acknowledged that the record showed improvements in Bertena L.'s conditions and that PA Webb's opinion was inconsistent with Dr. Vazquez-Gonzalez's opinion. (T. 27); *see e.g.*, (T. 111-12, 798-99, 1407, 1732, 1735).

Further, and despite Bertena L.'s argument, ALJ Goodale correctly declined to impose the additional time-off task and absenteeism limitations that PA Webb recommended. Bertena L. argues that PA Webb's "undisputed medical opinion" shows that her physical and mental impairments would cause her to exceed employer tolerances for time-off task and absenteeism (Pl. Br., pg. 20). The Court disagrees.

When an ALJ's RFC finding conflicts with a medical opinion, the ALJ must explain why the conflicting opinion was not adopted. *See* SSR 96-8P, 1996 SSR LEXIS 5 (S.S.A. July 2, 1996) ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). And although an ALJ need not reconcile every conflicting shred of evidence, they cannot selectively choose evidence that supports their conclusions.

*See Williams v. Colvin*, No. 13-roncv-5431 (RLE), 2015 WL 1223789, at *8 (S.D.N.Y. Mar. 17, 2015) (cleaned up); *see also Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (holding that an ALJ may not "arbitrarily substitute his own judgment for competent medical opinion").

In rejecting PA Webb's opined limitations, ALJ Goodale compared PA Webb's opinion with Dr. Vaquez-Gonzalez's and explained why he declined to adopt the limitations that Bertena L. now requests. *See e.g.*, (T. 26–27). ALJ Goodale specifically noted that PA Webb's opined limitations were inconsistent with those offered by Dr. Vazquez-Gonzalez—whose opinion he found more persuasive. (T. 27). What's more, ALJ Goodale noted that PA Webb's "extreme limitations" were inconsistent "with [the] relatively minimal abnormalities noted on imaging studies." (*Id.*). In regard to time-off task and absenteeism limitations, the Court ultimately finds that Bertena L.'s arguments amount to mere disagreement with how ALJ Goodale weighed evidence. But disagreement is not enough to overturn an ALJ's decision. *See Lisa M. ex rel. J.S. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00292 EAW, 2023 WL 3943997, at *3 (W.D.N.Y. June 12, 2023) ("A disagreement with how the ALJ weighed the evidence is not a valid basis to challenge the ALJ's

23

determination."). In sum, ALJ Goodale properly analyzed and rejected PA Webb's opinion.

* * *

The Court finds that ALJ Goodale properly evaluated the medical opinions offered by Dr. Vazquez-Gonzalez and PA Webb. Although Bertena L. disagrees with ALJ Goodale's assessment, the question is not whether substantial evidence supports Bertena L.'s views; "rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013). Bertena L.'s disagreement with ALJ Goodale's RFC is not a basis for remand. *See Wilson o/b/o J.J.W. v. Comm'r of Soc. Sec.*, No. 1:19-CV-737-DB, 2020 WL 3447800, at *5 (W.D.N.Y. June 24, 2020) ("[M]ere disagreement with the ALJ's findings does not warrant remand."). And so, the Court will not disturb ALJ Goodale's evaluation of Dr. Vazquez-Gonzalez's and PA Webb's opinions.

* * *

Taken together, Bertena L.'s arguments are unavailing. ALJ Goodale properly considered post-DLI evidence and properly evaluated

24

medical opinions from Dr. Vazquez-Gonzalez and PA Webb. In consequence, the Court affirms ALJ Goodale's decision.

## VII. CONCLUSION

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that Bertena L.'s motion for judgment on the pleadings (Dkt. 7, 9) be **DENIED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. 8) be **GRANTED**; and it is further

**ORDERED**, that the ALJ's decision be **AFFIRMED**.

Dated: March 17, 2026.

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge